UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Vu C. Kieu,

      Petitioner,

      v.                                                                                 Civil Action No. 5:10-CV-127

Office of Detention and Removal,
U.S. Immigration and Customs
Enforcement, Andrew Pallito,
Peter Danles, Vermont State
Parole Board,

      Respondents.

## REPORT AND RECOMMENDATION
(Docs. 1, 2 and 13)

Petitioner Vu C. Kieu has filed a *pro se* petition for writ of habeas corpus, citing 28 U.S.C. §§ 2241 and 2254 as bases for this court's jurisdiction. The Respondents to the petition are Commissioner Andrew Pallito of the Vermont Department of Corrections, the Vermont State Parole Board, Vermont State Parole Board Director Peter Danles (collectively "State Respondents"), and U.S. Immigration and Customs Enforcement ("ICE").

Kieu asserts that he has served his minimum state sentence, but has been denied early release because of a pending immigration detainer. In response, the State Respondents argue that Kieu failed to exhaust his state court remedies prior to filing his petition. ICE responds (1) that it is not a proper party because it is not Kieu's custodian;

(2) that the detainer does not constitute custody; (3) that the detainer is appropriate because Kieu's state court offense subjects him to mandatory immigration detention; and (4) that because he has been ordered removed, Kieu is subject to a 90-day detention period, and thereafter a presumptively reasonable detention period of up to six months. For reasons set forth more fully below, I recommend that the petition be DENIED and this case be DISMISSED.

## Factual Background

Kieu alleges that his biological father was a member of the American military stationed in Vietnam. His mother is of Vietnamese descent. He has lived in the United States since he was a child, and claims to be a naturalized citizen.

In December 2002, he was charged with misdemeanor domestic assault. He subsequently entered a guilty plea in 2003, was sentenced to six to eleven months in prison, all suspended, and placed on probation. Based upon the 2003 conviction, ICE served Kieu with a Notice to Appear for a removal proceeding. That same day, August 22, 2003, ICE arrested Kieu and detained him until his release on bond. Removal proceedings were ultimately scheduled for December 14, 2004.

On December 13, 2004, Kieu was charged by the State of Vermont with sexual assault on a minor, lewd and lascivious conduct with a child, and sexual assault. Once Kieu was taken into state custody, ICE issued an "Immigration Detainer - Notice of Action" requiring the State of Vermont to notify immigration officials prior to his release. (Doc. 1-1.) The detainer specifically stated that it was for notification purposes only, and that it "does not limit [the State's] discretion in any decision affecting the offender's

classification, work and quarters assignments, or other treatment which he or she would otherwise receive." (*Id.* at 1.)

The removal proceeding went forward as scheduled on December 14, 2004, and Kieu was ordered removed *in absentia*. On March 4, 2005, Kieu was sentenced in state court to five years imprisonment for sexual assault on a minor, with a consecutive sentence of up to five years for lewd and lascivious conduct with a minor. He also received a concurrent sentence of six to eleven months for violating his probation.

On March 1, 2006, Kieu wrote to the ICE office in St. Albans, Vermont and inquired as to whether he would be deported or detained upon his release from State custody. (Doc. 1-1 at 2.) His letter explained that his minimum release date was March 3, 2006, with a maximum release date of May 23, 2011.

> I have most recently been informed by my Vermont Caseworker, Ms. Bernadette Dewing, CSS, that I am not going to be released on my minimum due to your detainer that has been placed on me. She also apprised me that if I had documents from [ICE] specifically stating that I would not be deported or detained, that the Vermont Department of Corrections would release me.

(*Id.*) Kieu sent a similar letter to ICE in June 2006, and again in October 2006. (*Id.* at 3-4.)

On August 25, 2006, Kieu filed a grievance with the Vermont Department of Corrections ("DOC") after he was denied pre-parole programming because of the immigration detainer. (*Id.* at 6.) In response, a DOC investigating officer wrote that "[a]s Kieu has an active INS detainer, he is not eligible to participate in the VTPSA program and subsequently is also not eligible to be released from incarceration until such

a time as the detainer is removed by the Federal Government or he maxes out his Vermont sentence . . . ." (*Id.* at 8.)[1] The officer further stated that "Mr. Kieu is not eligible to participate in community re-integration supervision." (*Id.*)

Kieu continued to pursue his grievance, filing an appeal to the DOC Commissioner. (*Id.* at 9.) Commissioner Robert Hofmann responded:

> Your case plan calls for you to remain incarcerated in Vermont until you satisfy your maximum sentence. When someone is paroled to an INS detainer, they are deported to their country of origin. In a case such as yours, you would not be considered for parole to your INS detainer due to your country of origin, Vietnam, not having a Repatriation Agreement with the United States. Without a Repatriation Agreement in place between the United States and Vietnam, the Federal Government cannot deport you.

(*Id.* at 10.)

Kieu filed his petition for writ of habeas corpus in this court on May 26, 2010, and an amended petition on August 26, 2010. (Docs. 1, 13.)[2] He claims that he "has been denied early release and parole based on the immigration detainer as placed on the petitioner by the Deportation Officer . . . ." (Doc. 13 at 3.) He also makes clear that he is not challenging a final order of removal, but instead his "detention prior to issuance of any such order . . . ." (*Id.* at 4.) Kieu also challenges his detention pending removal as unconstitutional, and contends that he need not exhaust his administrative remedies where he is "contesting his removability." (*Id.*)

---

[1] The "INS" reference is to the Immigration and Naturalization Service. The INS and its functions have been replaced by ICE, which is a bureau within the Department of Homeland Security. *See* 6 U.S.C. §§ 202(3), 251.

[2] The amendment primarily re-numbers the paragraphs in the original petition, and does not contain any substantive changes. (Doc. 13.) The court will therefore refer simply to the "petition," rather than the "amended petition."

## Discussion

As noted above, the State Respondents argue that Kieu has failed to exhaust his state-court remedies. Specifically, they contend that furlough decisions by the DOC, as well as parole decisions by the Vermont Parole Board, are subject to review in state court, and that Kieu has therefore failed to satisfy the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). ICE's arguments relate to whether Kieu is in constructive federal custody, and whether the detainer is appropriate. The court will address the ICE arguments first.

### I.  Jurisdiction Over ICE

#### A.  Constructive Custody

Kieu has filed his petition under both § 2241 and § 2255 of Title 28. Because a § 2254 petition pertains solely to state custody, the court should review the question of federal custody in the context of § 2241. *See* 28 U.S.C. § 2254(a) ("district court shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court . . . ."); *Duamutef v. INS*, 386 F.3d 172, 176 n.3 (2d Cir. 2004) (noting with approval district court's construction of petition against INS as brought under § 2241). "[A] jurisdictional prerequisite for the granting of a writ of habeas corpus under 28 U.S.C. § 2241 is that the petitioner be 'in custody.'" *Simmonds v. INS*, 326 F.3d 351, 354 (2d Cir. 2003). Furthermore, the writ "must be sought against the authority that has custody of the petitioner." *Bell v. INS*, 292 F. Supp. 2d 370, 373 (D. Conn. 2003) (citing *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988)). That authority, however, "is not always the authority in whose [actual] custody the petitioner

5

is found." *Gillies v. Strange*, 2005 WL 3307349, at *3 (D. Conn. Dec. 6, 2005) (citing *Bell*, 292 F. Supp. 2d at 373) (bracket supplied).

In *Simmonds*, the Second Circuit determined that a petitioner who is in state custody, but is challenging a final order of removal, is in the constructive custody of immigration officials for purposes of § 2241 jurisdiction. The court recognized that in the majority of circuits, "the filing of a detainer, alone, does not create custody in the INS," but that the Second Circuit "has not yet resolved the issue." *Simmonds*, 326 F.3d at 354. The court again declined to address that precise question, finding instead that a "final order of removal is sufficient, by itself, to establish the requisite custody." *Id.*

In reaching its conclusion, the *Simmonds* court noted that a future jailor is a custodian where "there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement." *Id.* at 355. Responding to the federal government's argument that it could not execute the removal order while the inmate was in state custody, the court determined that

> in this respect, Simmonds' position is the same as that of an ordinary habeas petitioner who seeks to attack a sentence of incarceration, in one jurisdiction, when that sentence was made consecutive to the one the petitioner is then serving in another jurisdiction. In such circumstances, it is well established that custody exists in both jurisdictions and hence that habeas may lie to attack the future sentence . . . .

*Id.*

As this passage suggests, an important fact in *Simmonds* was that the petitioner was challenging the validity of his future incarceration pursuant to the final order of removal. That is not the case here, as Kieu makes clear in his petition. (Doc. 13 at 3)

6

("petitioner is not challenging any final order of removal . . . ."). However, in a subsequent ruling, the Second Circuit discouraged distinguishing *Simmonds* solely on the ground that the petitioner was not challenging a final removal order. *Duamutef*, 386 F.3d at 178 ("we are reluctant to adopt the District Court's holding that the principles driving the *Simmonds* decision could not be extended to a case like Duamutef's"). The court must therefore review that more recent case law to determine whether the holding in *Simmonds* applies in this case.

### B. *Duamutef*

In *Duamutef*, decided the year after *Simmonds*, the petitioner was in state custody and subject to a final order of removal. Unlike the petitioner in *Simmonds*, however, and much like Mr. Kieu, Duamutef was challenging "his current confinement – by the state authorities – claiming that his current confinement is the result of INS inaction." *Id.* at 177 (quoting *Duamutef v. INS*, 2003 WL 21087984, at *1 (E.D.N.Y. May 14, 2003)). Specifically, Duamutef had received a conditional parole from the New York State Parole Board for the purpose of deportation only, but INS officials had declined to take him into federal immigration custody. *Id.* 174-75. The *Duamutef* court discussed *Simmonds*, but found that it did not need to address the "complicated question" of constructive custody. *Id.* at 178. Instead, the court held that it had no jurisdiction to compel action by the INS since the petitioner had not been "released" from state custody, calling this a "more straightforward jurisdictional basis for affirming dismissal of Duamutef's claims." *Id.* at 178-80.

As noted above, Duamutef was granted *conditional* parole for the purpose of deportation only. Although he was parole eligible, having completed the minimum term of a 15-years-to-life sentence on a conviction for second degree murder, the Parole Board had declined to grant his request for standard parole "because of the nature of the crime, his continued refusal to accept responsibility for his actions and his lack of remorse." *Id.* at 179. The Second Circuit therefore questioned whether, absent affirmative action by the INS with respect to deportation, a conditional order of parole (or CPDO, "Conditional Parole for Deportation Only") qualified as a "release" from state custody.

The importance of a "release" arises out of the Immigration and Nationality Act of 1952 ("INA"). Under 8 U.S.C. § 1231(a) of the INA, once an alien has been ordered removed, the Attorney General is required to execute the removal within 90 days. For incarcerated persons, however, the removal period does not being until "the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii). "Indeed, under § 1231(a)(4)(A), 'the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment.'" *Duamutef*, 386 F.3d at 179. Accordingly, in *Duamutef*, the court found that "[o]ur determination of Duamutef's status – and of the Attorney General's obligations with respect to him – turns, then, on whether the Parole Board's grant of a CPDO to Duamutef can be characterized as a 'release' from state custody where, as here, the prisoner has not been delivered to (or retrieved by) the INS." *Id.* (parenthetical in original).

The Second Circuit's subsequent discussion about the nature of a CPDO is not relevant here, although its conclusion that a CPDO does not constitute a "release" is

8

significant. In the instant case, Kieu is being denied access to parole because of the immigration detainer. He has urged ICE to communicate with him and/or the DOC with respect to his deportability, but ICE does not appear to have responded. Therefore, as in *Duamutef*, Kieu is contesting his continued state custody based upon ICE's inaction. In the meantime, Kieu has not been paroled, and thus has not been released from state custody.[3] Indeed, the DOC has determined that he will remain in Vermont custody until he has satisfied his maximum sentence. (Doc. 1-1 at 10.)

Furthermore, the court has no jurisdiction to review the pace of ICE's decision-making with respect to the execution of the removal order. *See* 8 U.S.C. § 1252(g) (no jurisdiction to hear claim "arising from the decision or action by the Attorney General to . . . execute removal orders . . . ."). As the Second Circuit held in *Duamutef*, "[u]ntil Duamutef is released by the state . . . the pace at which the Attorney General proceeds to take Duamutef into custody and execute the removal order is within his discretion and

---

[3] This fact distinguishes Kieu's case from those in which the petitioner has been "voted to parole" but remains in state custody. *E.g., Johnson v. Warden*, 2009 WL 1625711, at *2 (D. Conn. June 9, 2009); *Gillies*, 2005 WL 3307349, at *7. In *Gillies*, the court held that the petitioner was effectively in federal custody because his parole had been granted, and that but for the immigration detainer "the DOC would have processed Gillies' release plan . . . ." 2005 WL 3307349, at *4. Here, the State has not taken any such affirmative action with respect to Kieu's parole status. Furthermore, while it might be argued that Kieu would have been granted parole absent the detainer, it remains the case that, as discussed below, Kieu has not exhausted his state court remedies with respect to the actions of the DOC and the Parole Board, and has not yet been ordered released from state custody.

thus beyond . . . review." 386 F.3d at 180.[4] The *Duamutef* decision also endorsed the holding that "'no due process rights are implicated by the failure to expeditiously remove an alien who has been issued a final order of deportation during the time that he remains in [state] custody.'" *Id.* (quoting *Cepeda v. INS*, 273 F. Supp. 2d 222, 224 (E.D.N.Y. 2003)) (bracket in original).[5] This court should therefore find, consistent with the holding *Duamutef*, that Kieu has no cause of action against the INS for its inaction in this case, and that his claims are beyond "§ 2241's purview." 386 F.3d at 182.

## II. Validity of Detainer

Even if the court were to find that it has jurisdiction, perhaps under the broad language of *Simmonds* to the effect that a final order of removal is sufficient to create constructive custody, *see Simmonds*, 326 F.3d at 354, there is little basis for a challenge

---

[4] This portion of the *Duamutef* decision was criticized in *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 267-68 (D. Conn. 2008). The *El Badrawi* court concluded that *Duamutef* was inconsistent with the canon of constitutional avoidance subsequently set forth in *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005), and therefore was not binding. The court reasoned that by declining jurisdiction over the Attorney General's refusal to execute a removal order, the *Duamutef* decision gave rise to Due Process concerns and therefore should have found § 1252 "at the very least ambiguous" as to whether it precludes jurisdiction.

As *Duamutef* is still good law in this Circuit, the court should abide by its holdings, and in particular, language that is directly on point. Furthermore, the facts of this case are quite different from those presented in *El Badrawi*. The *El Badrawi* case involved a non-criminal alien who was allegedly wrongfully detained, suffered poor treatment in a correctional facility while awaiting deportation, and when he agreed to leave the country voluntarily and was assured he could do so within six days, was nonetheless kept in custody for forty-two days. The plaintiff was in federal custody, albeit in a state correctional facility, the entire time, and the question was whether he was entitled to damages for the government's failure to execute the deportation order as promised.

Finally, although *Duamutef* specifically declined to decide whether the jurisdictional bar in § 1252(g) applied to habeas cases, 386 F.3d at 182 n.8, Congress has since amended the statute to make clear that it does. 8 U.S.C. § 1252(g) ("notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction . . . .").

[5] Of course, once the alien is in federal custody, there are constitutional protections against indefinite detention. *See, e.g, Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

10

to the detainer. Kieu's conviction for sexual assault on a minor constitutes an aggravated felony under the relevant immigration statute. 8 U.S.C. § 1101(a)(43)(A). That conviction renders Kieu deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). It also subjects him to mandatory detention once he is released from state custody. 8 U.S.C. §1226(c)(1)(B).

The final order of removal is based upon Kieu's conviction for domestic assault. This order, too, requires that he be detained. 8 U.S.C. § 1231(a)(2). Of course, as noted above, the detention does not commence until he is released by the DOC. 8 U.S.C. § 1231(a)(1)(B)(iii).

The fact that Kieu may not be deported because of the lack of a repatriation agreement is immaterial to the question of whether the detainer is valid. In *Zadvydas v. Davis*, the Supreme Court held that even in the absence of a repatriation agreement, a limited period of detention is presumptively reasonable, and does not violate the Due Process Clause. 533 U.S. at 699, 701. Specifically, the Court held that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates federal law if "(1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing." *Gabriel v. Cleary*, 2009 WL 2413674, at *3 (W.D.N.Y. Aug. 4, 2009) (citing *Zadvydas*, 533 U.S. at 701).

> On one hand, to meet his burden, the alien is not required 'to show the absence of *any* prospect of removal – no matter how unlikely or unforeseeable.' On the other hand, the alien does not prevail merely by demonstrating the absence of a repatriation agreement between the U.S. and

11

>his home country, where there is evidence that future negotiations between
>the countries may result in such an agreement.

*Id.* (quoting *Zadvydas*, 533 U.S. at 702) (emphasis in *Zadvydas*). Because there is a presumptively reasonable period of detention after Kieu's release from state custody, the court should not grant him relief from his pending detainer, and the petition brought against ICE should be DISMISSED.

### III. State Respondents

The States Respondents argue that Kieu's petition, brought pursuant to 28 U.S.C. § 2254, is barred for failure to exhaust state court remedies. They also argue that the Vermont State Parole Board and its Director, Peter Danles, are not proper respondents. As to this latter argument, the Second Circuit has held that in a habeas corpus proceeding, "the Parole Board is not the 'custodian' of the prisoner, and therefore, in order to establish jurisdiction an action challenging parole procedures must be brought against the warden of the prison in which the petitioner is confined." *United States v. Rosenberg*, 108 F. Supp. 2d 191, 201 (S.D.N.Y. 2000) (citing *Billiteri v. United States Board of Parole*, 541 F.2d 938 (2d Cir. 1976)). The claims against the Parole Board and Danles should therefore be DISMISSED without prejudice.

On the question of exhaustion, 28 U.S.C. § 2254(b)(1)(A) requires state court exhaustion prior to filing an action in federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). Consequently, to the extent that Kieu is bringing constitutional claims against his custodian with respect to his denial of access to parole, he ordinarily must "give the state courts one full opportunity to resolve

constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 842.

With respect to the DOC, Kieu's grievance asked for a positive recommendation for parole and access to pre-parole programming. (Doc 1-1 at 6, 9.) That grievance was denied. (*Id.* at 10.) The DOC now argues that Kieu could have sought review of the denial under Vermont Rule of Civil Procedure 75(a).

Rule 75(a) allows for judicial review of "[a]ny action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer . . . ." Vt. R. Civ. P. 75(a). There is precedent in Vermont for prisoners using Rule 75 as a mechanism by which to achieve state court review of an adverse grievance decision. *E.g. Towne v. Hofmann*, 2008 WL 3976483, at *2 (Aug. Term 2008); *Martin v. Hofmann*, 2008 WL 2815593, at *1-*2 (Feb. Term 2008). That review, however, must be brought within 30 days. Vt. R. Civ. P. 75(c). Kieu's grievance was denied by the Commissioner in 2007.

Courts have generally held that where a petitioner has failed to raise a claim in state court, and raising it now would be futile, the claim cannot be brought in a habeas corpus petition. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161 (1996) (finding state procedural rule barred *Brady* claim that was never raised in state court); *Reyes v. Keane*, 118 F.3d 136, 139-40 (2d Cir. 1997) (deeming ineffective assistance of counsel claim exhausted but procedurally barred where attempt to raise claim on state collateral review "would be futile"); *but see Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990). Furthermore, it has been held that procedural rules, including rules governing the

13

timeliness of motions, constitute "adequate and independent state law grounds" justifying a bar to relief in federal court. *See Chappero v. West*, 2009 WL 2058534, at *2 (S.D.N.Y. July 15, 2009). Accordingly, and absent any showing of cause or prejudice for his failure to bring a Rule 75 motion, Kieu's claim for relief with respect to the denial of his grievance is procedurally barred.[6] *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (requiring cause and prejudice or a showing that failure to consider claims will result in a "fundamental miscarriage of justice").

With respect to the Parole Board, the State Respondents have submitted a copy of the Board's procedural manual which provides for "court review" of whether the Board "violated the State or Federal constitutional rights of an offender . . . ." (Doc. 7-4 at 46.) The State Respondents have not pointed the court to any deadline relating to this review provision. There can be no dispute, however, that Kieu has failed to avail himself of such "court review," and that any claim against the Parole Board is therefore unexhausted. I therefore recommend that the petition brought against the State Respondents be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that Kieu's petition for writ of habeas corpus (Docs. 1 and 13) be DENIED, and that this case be DISMISSED. If this

---

[6] Even if the claim were not procedurally barred, I would recommend denial on the merits, as Kieu has not raised a constitutional or federal law claim with respect to any action by the DOC. *See* 28 U.S.C. § 2254(a) (review limited to constitutional errors or violations of federal law); § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Report and Recommendation is adopted, Kieu's motion to appoint counsel (Doc. 2) should be DENIED as moot.

Dated at Burlington, in the District of Vermont, this 1st day of November, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).